IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SHELLY L. HALPHIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 25-00022-CV-W-WBG |
| | ) |
| JACKSON COUNTY, MISSOURI, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER AND OPINION GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

Pending is a motion to dismiss filed by Defendants Jackson County, Missouri and Deputy Christopher Golubski. Doc. 21. For the following reasons, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND[1]

On December 6, 2021, Doug Halphin expressed thoughts of suicide to his family and discharged a firearm outside his parents' home, which is located on acreage with wooded areas (hereinafter, "the property"). Doc. 16 at 2.[2] Later that day, the family was unable to locate Doug[3] on the property and feared he intended to take his own life. *Id*. The family called 911, requesting law enforcement's assistance in locating Doug. *Id*.

Jackson County Sheriff's Department ("JCSD") deputies arrived at the property and utilized drones to locate Doug. *Id*. It appears Carl Halphin, Doug's father, found Doug in his

---

[1] Plaintiff's amended complaint (Doc. 16) provides the factual information in this section. At this stage, Plaintiff's allegations must be accepted as true and viewed in the light most favorable to her. *See infra*, section III.

[2] When referencing filings, the Court uses the pagination applied by CM/ECF, which may differ from the parties' pagination.

[3] Because several individuals identified in the amended complaint share the same last name, Halphin, the Court refers to the individuals by their first names to avoid confusion.

truck on the west side of the property. *Id*. Carl briefly spoke to Doug, who would not leave the truck while JCSD deputies were on the property. *Id*. JCSD deputies directed Carl and Robert Halphin, Doug's son, to leave the property. *Id*.

Doug's mother, Becky Halphin, attempted to enter the property to speak with Doug. Doc. 16 at 2. But she was stopped by an officer barricading the road to her residence. *Id*. At that time, a JCSD negotiator asked Becky some questions about Doug and the situation. *Id*. at 3. Becky spoke with the negotiator for a few minutes. *Id*. Shortly thereafter, Shelly Halphin, Doug's wife and the plaintiff in this matter, arrived but was prohibited from entering the property to speak with Doug. *Id*. Both Shelly and Becky told JCSD deputies they believed they could de-escalate the situation. *Id*.

Although Doug had not committed a crime, JCSD deputies remained at the property "and had lethal firearms prepared for use when they engaged Doug." *Id*. "JCSD deputies did not stand down or attempt to de-escalate the situation even though they were only called to the Property to assist the family in locating Doug." *Id*. At one point, Doug left the truck and entered the garage several feet away. *Id*. As he did so, he aimed his weapon at the ground and did not move toward the officers. *Id*. At this point, deputies could have used non-lethal mechanisms to subdue Doug, but they did not do so. *Id*. Their failure to use non-lethal mechanisms "was an unreasonable practice for the situation." *Id*.

Doug retreated to a pasture on the property where he sat for about forty minutes. Doc. 16 at 3. JCSD deputies pursued Doug. *Id*. They sat staring at him but did not communicate with him. *Id*. Doug's retreat to the pasture "offered the JCSD, and the negotiator, ample time to assess the situation further, stand down, call for further mental health guidance, and speak with the family." *Id*. JCSD either "chose not to do [so]" or "doing so was against JCSD policy." *Id*. When

2

Doug returned to his truck, a SWAT team, which was activated by JCSD, drove its vehicle into the truck, preventing it from moving. *Id*. at 4-5, 7.

Deputy Golubski arrived at the property shortly thereafter. *Id*. at 5. Roughly thirty to forty minutes after he arrived, Deputy Golubski shot Doug while Doug was sitting in the truck with the window up. *Id*. at 5-7. "No one other than Golubski saw Doug as an immediate threat at the time he was shot." *Id*. at 6. Deputy Golubski allegedly "acted in an objectively unreasonable manner and used excessive force" to seize Doug, which resulted in his death. *Id*. at 7. Although he had a chemical munitions gun and chemical munitions with him, Deputy Golubski did not utilize these less lethal munitions. *Id*. at 5-7.

## II.     PROCEDURAL HISTORY

On December 5, 2024, Plaintiff Shelly Halphin, representing herself, filed a lawsuit against JCSD and Deputy Golubski seeking monetary and injunctive relief in the Circuit Court of Jackson County, Missouri. Doc. 1-2 at 4-8. On January 13, 2025, Defendants removed the matter to this Court. Doc. 1. On January 21, 2025, Defendants filed a motion to dismiss. Docs. 5-6. They argued Plaintiff's lawsuit should be dismissed because JCSD is not a suable entity, and Plaintiff failed to state a claim against Deputy Golubski in his official capacity. Doc. 5 at 2; Doc. 6 at 3-5.

On March 10, 2025, the Court granted Defendants' motion to dismiss Plaintiff's claims against JCSD. Doc. 15 at 6. The Court denied without prejudice Defendants' motion to dismiss Plaintiff's excessive force claim against Deputy Golubski in his official capacity. *Id*. at 10-12. The Court granted Plaintiff's request to amend her complaint to name Jackson County, specify the cause(s) of action against Deputy Golubski, and set forth allegations supporting her cause(s) of action against Jackson County and/or Deputy Golubski. *Id*. at 6-10.

On March 31, 2025, Plaintiff timely filed an amended complaint. Doc. 16. Therein, she alleges Jackson County violated Doug's Fourth Amendment rights to be secure in his person and to be free from excessive force. Doc. 16 at 1-7. She maintains certain policies and customs of Jackson County are unconstitutional, and Jackson County failed to provide adequate training, which resulted in Doug's constitutional rights being violated. *Id*. at 2-7.[4] Plaintiff also alleges claims against Deputy Golubski in his official capacity. *Id*. at 1.

On April 14, 2025, Defendants moved to dismiss the amended complaint. Docs. 21-22. They argue Plaintiff's claims against Deputy Golubski should be dismissed because claims brought against him in his official capacity are duplicative of claims against Jackson County. Doc. 22 at 4-6. Defendants also contend the claims against Jackson County should be dismissed because Plaintiff has not sufficiently alleged a claim under 42 U.S.C. § 1983. *Id*. at 6-9. On April 25, 2025, Plaintiff filed her opposition to Defendants' motion, arguing her amended complaint contains sufficient factual allegations to state plausible claims for relief. Doc. 24. On May 9, 2025, Defendants filed their reply. Doc. 25.[5]

### III. LEGAL STANDARD

To state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the Rule 8 pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The pleading standard is not satisfied when

---

[4] Plaintiff's allegations regarding unconstitutional policies and customs and Jackson County's failure to train are further discussed *infra*, section IV(B)(1)-(2).

[5] In addition, on July 8, 2025, Defendants notified the Court of the Supreme Court's decision in *Barnes v. Felix*, 145 S.Ct. 1353 (2025). Doc. 27.

a pleading contains mere "labels and conclusions," "formulaic recitation of the elements" of a claim, or "naked assertion[s]" lacking "further factual enhancement." *Id*. (citing *Twombly*, 550 U.S. at 555, 557).

To survive a motion to dismiss for failure to state a claim, the complaint must contain sufficient facts, when accepted as true, makes relief plausible on its face. *Id*. (citing *Twombly*, 550 U.S. at 570). "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits [of the claim] is more than a 'sheer possibility.'" *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 757 (8th Cir. 2021) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Id*. (internal quotation marks and citation omitted). While the Court liberally construes a pro se complaint, a pro se complaint "must contain specific facts supporting [the plaintiff's] conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted).

When considering a motion to dismiss for failure to state a claim, several tenets apply. First, a court must accept all factual allegations in the complaint as true. *Braden*, 588 F.3d at 594. Second, "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Id*. Third, all inferences are drawn in the light most favorable to the non-moving party. *Id*. at 595 (observing "*Twombly* and *Iqbal* did not change this fundamental tenet of Rule 12(b)(6) practice."). Fourth, at the pleading stage, direct evidence is not required, and factual allegations may be circumstantial. *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015). Finally, because evaluating a complaint is context specific, a court must "draw on its judicial experience and common sense" when considering a motion to dismiss. *Braden*, 588 F.3d at 594 (quoting *Iqbal*, 556 U.S. at 679).

## IV. DISCUSSION

### A. Plaintiff's Claims Against Deputy Golubski

Plaintiff asserts claims against Deputy Golubski in his official capacity and claims against Jackson County, Deputy Golubski's employer. *See* Doc. 16 at 1, 6-7. Defendants argue Plaintiff's claims against Deputy Golubski in his official capacity should be dismissed because they are duplicative of Plaintiff's claims against Jackson County. Doc. 21 at 1; Doc. 22 at 4-6. In her opposition to Defendants' motion to dismiss, Plaintiff does not address why her claims against Deputy Golubski in his official capacity should not be dismissed. *See* Doc. 24.

An official capacity claim "is *not* a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (emphasis in original). As the Eighth Circuit has held, "[a] suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartles Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010); *see also Schaffer v. Beringer*, 842 F.3d 585, 596 (8th Cir. 2016) (citation omitted). When the employing entity is also named in the suit, the claim against the government agent in his official capacity should be dismissed. *King v. City of Crestwood*, 899 F.3d 643, 650 (8th Cir. 2018) (citation mitted).

Plaintiff's claims against Deputy Golubski in his official capacity are the equivalent of Plaintiff filing those claims against Deputy Golubski's employer, Jackson County. Because Plaintiff asserts claims against Deputy Golubski in his official capacity only, but she also names Jackson County in her amended complaint, Plaintiff's claims against Deputy Golubski in his official capacity must be dismissed. Therefore, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's claims against Deputy Golubski in his official capacity.

B.   **Plaintiff's Claims Against Jackson County**

In her amended complaint, Plaintiff purports to allege claims against Jackson County pursuant to 42 U.S.C. § 1983. Doc. 16 at 1, 6-7. Jackson County argues Plaintiff has not sufficiently pleaded a claim for municipal liability. Doc. 22 at 6-9. "Section 1983 provides a mechanism by which aggrieved plaintiffs may sue a state actor for violation of their constitutional rights." *Stockley v. Joyce*, 963 F.3d 809, 817 (8th Cir. 2020) (citation omitted). Pursuant to *Monell v. Department of Social Services of City of New York*, the United States Supreme Court found Congress intended for "municipalities and other local government units to be included among those persons to whom § 1983 applies." 436 U.S. 658, 690 (1978). While a local governing body cannot be held liable for solely employing an alleged tortfeasor, it can be liable when an unconstitutional act resulted from an official policy, an unofficial custom, or deliberately indifferent failure to train or supervise. *Id.* at 690-91; *see also Atkinson v. City of Mountain View*, 709 F.3d 1201, 1214 (8th Cir. 2013) (citations omitted).

**(1)   Policy and/or Custom**

Jackson County moves to dismiss Plaintiff's section 1983 claims based on policy and/or custom, arguing Plaintiff fails to allege sufficient facts to establish said claims. Doc. 22 at 7-9.[6] To sufficiently plead the existence of an unconstitutional policy and/or custom, the complaint "must allege facts which would support the existence of an unconstitutional policy or custom." *Watkins v. City of St. Louis*, 102 F.4th 947, 954 (8th Cir. 2024) (citation omitted). "Dismissal is proper when a complaint does not contain any "allegations, reference, or language by which one

---

[6] Jackson County's arguments regarding Plaintiff's section 1983 claim based on failure to train are discussed *infra*, section IV(B)(2).

could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom . . . ." *Id*. (citation omitted).

In the amended complaint, Plaintiff identifies several portions of JCSD Policy 429, which pertains to Crisis Intervention Incidents. Doc. 16 at 4. According to Section 429.6, "[d]eputies should consider taking no action or passively monitoring the situation may be the most reasonable response to a mental health crisis." *Id*. And deputies shall not "use stances or tactics which can be interpreted as aggressive" or "[c]orner a person who is not believed to be armed, violent, or suicidal." *Id*.

In section 429.7, deputies are instructed to request the communications specialist provide critical information as it becomes available, including whether the individual previously threatened or attempted suicide, and whether law enforcement responded to said threat or attempt. *Id*. Per section 429.8, supervisors must "[c]onsider strategic disengagement," including "removing or reducing law enforcement resources or engaging in passive monitoring." *Id*. Finally, once immediate safety concerns are addressed during a mental health crisis, the policy instructs deputies to "[e]valuate whether outside non-LEO resources are available" and "[r]emove distractions and disruptive people from the area." *Id.*

With regard to Jackson County's customs or practices, Plaintiff avers deputies are improperly authorized to corner individuals with suicidal ideations, restrict their movements, and "seiz[e] them in an unreasonable way that escalates rather than de-escalates the mental health crisis." Doc. 16 at 7. She also contends JCSD deputies' utilization of lethal mechanisms during a mental health crisis is an "unreasonable practice," and deputies' failure to reconnect with a family during a mental health crisis is a defective practice. *Id*. at 3; *see also id*. at 5-7. Furthermore,

Plaintiff alleges Jackson County's custom of "not authoriz[ing] a stand down when a person in crisis is suicidal" results in an unconstitutional seizure. *Id*. at 7.

In addition to identifying the foregoing policies, customs, and/or practices, Plaintiff sets forth numerous factual allegations supporting the existence of unconstitutional policies. These allegations include, but are certainly not limited to, the following:

- "Doug's death was the result of excessive and objectively unreasonable force by Golubski, numerous failures to communicate, and [Jackson County's] policies, practices, and training that resulted in violations of Doug's constitutional rights." Doc. 16 at 2; *see also id*. at 3-7.

- "Officer Davidson did not reconnect with the family during the crisis even though she was aware they were available at the barricade. This is a defective policy and practice for a mental health crisis situation." *Id*. at 3.

- "Section 429.6 [regarding deputies not] [c]orner[ing] a person who is not believed to be armed, violent, or suicidal . . . should have also applied to Doug's situation – a mental health crisis with threats of suicide. The policy itself violates the [F]ourth [A]mendment rights of those who are facing a mental health crisis and more likely than not leads to escalation and deadly outcomes. Again, the order of the day for the JCSD appeared to be escalation rather than de-escalation." *Id*. at 4.

- "Had the JCSD spoken to the family at any length [as indicated in section 429.7(b)], which they had time to do, they would have been informed of how [a] prior incident was successfully handled." *Id*.; *see also id*. at 6-7.

Based upon the foregoing allegations, which must be accepted as true, the Court finds Plaintiff has alleged sufficient facts to support plausible claims for constitutional violations resulting from policies and/or customs. Accordingly, the Court **DENIES** Jackson County's motion to dismiss Plaintiff's section 1983 claims based on policy and custom.

**(2)     Training**

Jackson County also moves to dismiss Plaintiff's section 1983 claim based on failure to train. Doc. 22 at 6-7. To state a failure to train claim under section 1983, a plaintiff must plead sufficient facts showing (1) the governmental entity's training practices were inadequate; (2) the entity "was deliberately indifferent to the rights of others in adopting these training practices," and

its "failure to train was a result of deliberate and conscious choices it made"; and (3) the entity's alleged training deficiencies caused constitutional deprivation. *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (citation omitted). "Plaintiffs must prove that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [governmental entity] can reasonably be said to have been deliberately indifferent to the need.'" *B.A.B., Jr. v. Bd. of Educ. of City of St. Louis*, 698 F.3d 1037, 1040 (8th Cir. 2012) (citation omitted). "'Deliberate indifference' entails a level of culpability equal to the criminal law definition of recklessness." *Id*. (citation omitted).

In the amended complaint, Plaintiff alleges Jackson County improperly trained law enforcement to "corner" individuals with suicidal ideations, "restricting their movement and seizing them in an unreasonable way that escalates rather than de-escalates the mental health crisis." Doc. 16 at 7. She also avers Jackson County provided inadequate training for law enforcement to properly handle an individual with suicidal ideations and de-escalate the situation. *Id*. Plaintiff maintains that because Jackson County's policy and practice "is to take steps to seize or corner or trap an individual who is suicidal rather than attempt to de-escalate the situation," deputies "need to be trained to adequately account for the needs of the individual, which can be gathered through ongoing communications with the family, rather than have a general policy that can too often lead to deadly outcomes, such as Doug's death." *Id*. Finally, Plaintiff avers Jackson County, "through its training and custom, generally does not authorize a stand down when a person in crisis is suicidal. This results in an unconstitutional seizure." *Id*.

Jackson County argues the foregoing allegations are insufficient to plead a failure to train claim because Plaintiff does not allege Jackson County had reason to believe its training was inadequate. Doc. 22 at 7. In support, Jackson County cites one Eighth Circuit decision. *Id*. (citing

10
Case 4:25-cv-00022-WBG     Document 28     Filed 07/28/25     Page 10 of 11

*Atkinson*, 709 F.3d at 1217). The procedural posture of the cited case is much different than this matter. In *Atkinson*, the Eighth Circuit reviewed whether a district court properly granted summary judgment. 709 F.3d at 1216-18. At the summary judgment stage, the Eighth Circuit stated there must be "**evidence** indicating the city had reason to believe . . . its training . . . was inadequate." *Id*. at 1217 (emphasis added).

At the motion to dismiss stage, direct evidence is not required. *See McDonough*, 799 F.3d at 945. Also, the Court must read the amended complaint as a whole, accept all factual allegations as true, draw all inferences in the light most favorable to Plaintiff, and employ its experience and common sense. *See supra*, section III. When applying these tenets, the Court finds Plaintiff has sufficiently alleged a plausible claim of failure to train under section 1983. Therefore, the Court **DENIES** Jackson County's motion to dismiss Plaintiff's section 1983 claim based on failure to train.

## V. CONCLUSION

Based on the foregoing discussion, the Court **GRANTS** Defendants' motion to dismiss with respect to Plaintiff's claims against Deputy Golubski in his official capacity, and the Court **DENIES** Defendants' motion to dismiss with regard to Plaintiff's claims against Jackson County.

**IT IS SO ORDERED.**

DATE: July 28, 2025                                         */s/ W. Brian Gaddy*
                                                            W. BRIAN GADDY
                                                            UNITED STATES MAGISTRATE JUDGE